# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Mark Skiba, )<br>       Plaintiff, )<br>)<br>v. )<br>)<br>Canadian National Railway Company, )<br>Illinois Central Railroad, and Canadian )<br>National Transportation, Ltd., )<br>       Defendants. ) | No: 15 C 5353<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion for summary judgment [50] is granted. All pending motions are stricken. Civil case terminated.

## STATEMENT

Defendant Illinois Central Railroad Company ("IC" or "Defendant") is Plaintiff Mark Skiba's employer.[1] (Pl.'s Resp. Def's. Stmt. Facts, Dkt. # 62, ¶ 1.). Plaintiff is a citizen of the United States of America, was born in December 1952, and is currently employed by IC as a Material Handler. (*Id.*) Plaintiff brings claims against IC under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), alleging national origin discrimination as well as retaliation. Plaintiff began working for IC in 2008. (*Id.* ¶ 4.) In February 2011, Jim Voytechek (Director, Systems Network Operations) promoted Plaintiff to the position of Motive Power Supervisor, after Plaintiff interviewed with Voytechek, Daniel Clermont (Senior Manager, Motive Power), and Angela Lee (Recruiter). (*Id.*) Despite his title as Motive Power Supervisor, Plaintiff did not actually supervise any employees when he was in the Motive Power department. (*Id.*) At the time Plaintiff was promoted to the Motive Power department in 2011, he was 58 years old. (*Id.*)

As a Motive Power Supervisor, Plaintiff reported to Clermont. (*Id.* ¶ 5.) Clermont in turn reported to Voytechek, who reported to Albert Nashman (Assistant Vice President of Network Operations). (*Id.*) Plaintiff's claim of national origin discrimination is based on the fact that he is American and the "management hierarchy" to whom he reported when he worked in the Motive Power department – Clermont, Voytechek, and Nashman – was Canadian. Plaintiff's

---

[1] While Canadian National Railway Company and Canadian National Transportation, Ltd. are named defendants, they have not been served nor has counsel entered an appearance for either of them. Canadian National Railway Company and Canadian National Transportation, Ltd. are dismissed for lack of service.

Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC") states that he "was treated dissimilarly in job reclassification among younger employees and employees of Canadian citizenship." (Compl., Ex. A, Dkt. # 1-1.) In June 2012, one of Plaintiff's co-workers complained that Clermont had used profanity and screamed "when addressing [him] and [his] co-workers." (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 62, ¶ 6.). Human Resources Associate Veronica Loewy interviewed Plaintiff as part of her investigation into the complaint. (*Id*.) At the time of her investigation, Loewy reported to Duane Spears (Senior Manager of Compliance), who in turn reported to Allan Rothwell (Director of HR). (*Id*.) In late June or early July 2012, Plaintiff spoke to Loewy on the telephone about Clermont's behavior. (*Id*. ¶ 7.) On July 4, 2012, he then sent a follow-up email to Loewy, in which he complained that Clermont had continued to engage in "abusive conduct" towards all of his direct reports in the form of "berating, badgering, and disrespect." (*Id*.)

On September 16, 2012, Plaintiff sent an email to Loewy, Spears, and the Office of the Ombudsman, complaining that Clermont had again behaved in an "abusive" manner towards Plaintiff earlier that month, and requesting to be placed in another department. (*Id* ¶ 8.) In his September 16, 2012 email, Plaintiff characterized his problems with Clermont as a "personality conflict." (*Id.*) By letter dated September 21, 2012, Loewy advised Plaintiff of the outcome of her investigation into Clermont's behavior and further advised Plaintiff that he could apply for open positions posted on the Company's ePortal Site if he wanted to leave the Motive Power department. (*Id*. ¶ 9.) Plaintiff responded to Loewy's letter by email on September 28, 2012, stating that he had not intended his September 16th email to be a complaint and reiterating that his difficulty with Clermont was a "personality conflict with [a] superior." (*Id*.)

On October 14, 2012, Plaintiff made a "formal complaint" against Clermont in an email to Loewy and Spears. (*Id*. ¶ 10.) Plaintiff's email states, "so the basis of complaint reasoning is four-fold: 1) Mr. Clermont providing a continual hostile environment, 2) Mr. Clermont retaliation against me for previous complaints, as well as, testimony requested by HR, 3) disrespecting me, by publicly mocking and ridiculing my medical condition, 4) discrimination – by nature of holding only me accountable with written negative consequences – for alleged errors that everyone else makes – without any such punitive actions taken against them." (Id. ¶ 10.) Nashman and Voytechek testified that In late December 2012 and early 2013, they decided to downsize the Motive Power department by consolidating the Homewood location into the sub-office in Edmonton to centralize the motive power function in one place. (Id.. ¶ 11.) In January 2013, Clermont was reassigned to other duties in Canada, leaving only three people in the Homewood Motive Power department: Plaintiff, Dwain Henderson (who had a supervisor role as second-in-command under Clermont), and Ed Polacek. (Id. ¶ 12.)

Effective January 21, 2013, Plaintiff's position was eliminated as part of the downsizing of the Motive Power department. (*Id*. ¶ 13.) Plaintiff learned about the decision to abolish his position on or around January 15, 2013, and acknowledges that his position was eliminated because he was "the lowest seniority man" in the department. (*Id*.) Voytechek had authority to decide which employees would fill open spots in the Motive Power department. (*Id*.) Rothwell,

Director of Human Resources, testified that his telephone journal notes of January 11, 2012 indicate that Albert Nashman called the human resources department to say, "Albert [Nashman] is reducing power desk in U.S. to only two positions, " "Skiba likely to be surplus," and "timing uncertain." (*Id*.)

Rothwell attempted to assist Plaintiff in finding a new position by reaching out to several managers and setting up interviews for Plaintiff. (*Id*. ¶ 14.) On January 29, 2013, when Plaintiff had been unable to secure another position, Rothwell verbally conveyed to Plaintiff an offer for an open position as a Clerk, and the offer was memorialized in a formal written offer dated January 31, 2013. (*Id*. ¶ 15.) According to Plaintiff, he believed that he continued to be considered for management positions despite accepting the clerical job. (*Id*.) Plaintiff began working in the clerical position on March 4, 2013. (*Id*. ¶ 16.)

When Plaintiff spoke with Rothwell in January 2013 after learning that his position was being eliminated, he asked about a "direct transfer" to a management position in another department. (*Id*. ¶ 18.) Rothwell advised Plaintiff that he was not going to receive a direct placement into a management position, but offered to help Plaintiff with interviews for management jobs. (*Id*.) Plaintiff knew no later than February 1, 2013 that he was not going to get "direct placement" into a management position, although he still held out hope that he might be hired for one of the positions for which he had interviewed. (*Id*.) On June 24, 2013, Plaintiff sent an email to Rothwell inquiring about "the possibility of obtaining an accommodation to be placed in one of many jobs [he'd] applied for since late January 2012," and stating that he understood two previous Motive Power Supervisors, Carrie Roberts and Major Norman, had received such an "accommodation." (*Id.* ¶ 17.) Rothwell replied to Plaintiff's email on June 25, 2012, advising Plaintiff that Roberts and Norman had worked out transfers to other positions "based on their knowledge, skill and ability – not because of any intervention by my office." (*Id*.)

In discovery, Plaintiff identified 82 management positions for which he purportedly applied from 2012 to 3013 and in 2015. (*Id*. ¶ 44.) No recruiter or hiring manager ever said anything to Plaintiff about his citizenship or national origin. (*Id*. ¶ 78.) Other than Voytechek's reportedly asking Plaintiff how old he was before promoting him to the position of Motive Power Supervisor, no hiring manager or recruiter ever made any comments to Plaintiff about his age. (*Id*. ¶ 79.) Additional relevant facts will be discussed in the text as necessary.

### Age

The ADEA makes it unlawful for an employer to take an adverse employment action against an individual "because of such individual's age." 29 U.S.C. § 623(a)(1); *Ripberger v. Corizon, Inc*., 773 F.3d 871, 880 (7th Cir. 2014). ADEA protections extend to individuals who are 40 years of age and older. 29 U.S.C. § 631(a). "The inquiry that must be considered, . . . is 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the . . . adverse employment action.'"

*Memon v. W. Tech. Coll.*, No. 16-1814, 2016 WL 7228688, at *2 (7th Cir. Dec. 12, 2016) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). "In the age discrimination context, it is not enough for [Plaintiff] to show that h[is] age was a motivating factor in [the] . . . decision; []he must demonstrate that 'but for' h[is] age, [IC] would not have eliminated h[is] position." *Mayenschein v. WS Packaging Grp. Inc.*, No. 15-C-858, 2016 WL 6989785, at *5 (E.D. Wis. Nov. 29, 2016) (citing *Martino v. MCI*, 574 F.3d 447, 455 (7th Cir. 2009)).[2]

Plaintiff first contends that statements made by the senior management and decisionmakers establish discriminatory intent based on Plaintiff's age. Specifically, Plaintiff notes that:

- CN Director Voytechek asked Plaintiff about his age in February 2011 at his interview for the Supervisor in the Motive Power Department and purportedly said to Plaintiff, "I shouldn't have asked you that question, right?"

- Human Resources Director Rothwell described Plaintiff as a "later career person" to his superior in explaining Plaintiff's reassignment to the clerk position

- In rejecting Plaintiff from certain positions to which he applied after being terminated from the Motive Power Department, IC personnel stated that: Plaintiff "would not respond well to the need for additional training"; a younger employee who was hired would be "quick[er]" to grasp certain parts of the job; Plaintiff was "low energy"; and one hiring manager was concerned about the "retirement" age of candidates.

Voytechek's inquiry about Plaintiff's age (which was 58) at his February 2011 interview does not support a finding of intentional discrimination for the termination of his position and his transfer to the non-management clerk position in January and February 2013. "A particular remark can provide an inference of discrimination when the remark was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Crotteau v. St. Coletta of Wis.*, No. 14-CV-652-JDP, 2016 WL 4133598, at *5 (W.D. Wis. Aug. 3, 2016). Here, Voytechek's question about Plaintiff's age was not made at the time of his termination, nor was it in reference to the adverse employment action. Indeed, Voytechek promoted Plaintiff to the Motive Power Supervisor position when Plaintiff was 58, weakening Plaintiff's claim of age discrimination. *See Victor v. Vill. of Hoffman Estates*, No. 13 C 00921, 2016 WL 232420, at *7 (N.D. Ill. Jan. 20, 2016) ("[W]hile the fact that the Village first extended

---

[2] While IC also argues that many of the alleged adverse actions of discrimination are time-barred, the Court need not address this argument with respect to the age discrimination claim as the claim fails on the merits.

her to a full-time status at age 55 undermines any inference that in returning her to part-time status two years later the defendants acted because she had aged two years.") (citing *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880-81 (7th Cir. 2014) ("[T]he notion that [defendant] desired to eliminate [plaintiff] because of her age is unlikely given that he had hired [plaintiff]. . . just two years before when she was 57 years old."); *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994) ("It seems rather suspect to claim that the company that hired him at age 47 'ad suddenly developed an aversion to older people' two years later.")).

Nor are the comments that Plaintiff would "not respond well to additional training" and was "low energy" evidence of age-based discrimination, particularly when viewed in context. As to the former comment, Derrell Ross, Manager, Safety & Compliance, attests that Plaintiff was selected to interview for two openings as a Safety Officer, who would "perform a significant amount of training." (Ross Decl., Dkt. # 53-18, ¶ 5.) After a first interview, Ross "determined that [Plaintiff] was among the more qualified candidates for the Safety Officer position based on his experience." (*Id.* ¶ 6.) However, after asking Plaintiff back for a second interview, which required Plaintiff to prepare and present a 10-minute PowerPoint presentation, Ross determined that Plaintiff's "presentation style was limited and did not naturally invite participation or questions." (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 62, ¶ 53; Ross Decl., Dkt. # 53-18, ¶ 7.) Ross further stated that Plaintiff "presented as somewhat over-confident regarding his own knowledge and abilities," and that he "was worried that [Plaintiff] would not respond well to the need for additional training." (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 62, ¶ 53; Ross Decl., Dkt. # 53-18, ¶ 7.) Thus, it is clear that the concern about Plaintiff's response to additional training was based on his demeanor and personality and not his age. Plaintiff disputes the "subjective viewpoints" stated in Ross's declaration, and points out that interview notes taken by IC personnel regarding other positions Plaintiff applied for indicate that Plaintiff has a "deep history" in safety and management. Indeed, Ross acknowledged Plaintiff's many years' experience in the area of safety, but rejected him from the Safety Officer position because he believed Plaintiff lacked the presentation and communication skills necessary to succeed in the job, not because he lacked experience in the relevant field.

The comment related to "low energy" was purportedly made by Craig Dettman, who interviewed Plaintiff for a position of Benefits Administrator–Attendance Management. Dettman testified that he did not "recall that there was much energy in the interview," and Plaintiff's counsel then asked Dettman, "Tell me what you remember about that, no energy in the interview." (Dettman Dep., Dkt. # 63, at 131-32.) Dettman responded, "Well, I mean, just conversation was just very plain and . . . . ," when counsel asked Dettman what he meant, Dettman said, "That's all, just in tone and response." (*Id.* at 132.) Nothing in this testimony indicates that Dettman's statement regarding the energy level in Plaintiff's interview was related to age.

Plaintiff's reliance on the use of the term "retirement age" by a hiring manager is inapposite because the record support he cites to is an email regarding a different candidate–Michael Mowen. (Pl.'s Ex. 78, Dkt. # 66-1, PageID #:2645.) Plaintiff fails to point to

any evidence demonstrating that the hiring manager's comment is any way relevant to Plaintiff, the elimination of his position, or the fact that he did not receive offers for any of the management positions for which he applied.

Martyn Peterson, who interviewed but rejected Plaintiff for the position of Manager, Truck Owner-Operator, testified that "it was [his] impression that [another candidate] would grasp some of the aspects of the job a little faster than [Plaintiff] and [fellow applicant] Scott [Carver]." (Def.'s Ex. 19, Peterson Dep., Dkt. # 53-19, at 140.) When Plaintiff's counsel asked Peterson what his impression was based on, Peterson responded, "Based on, well again, my overall impression on how they would do," and noted that there are "[a] lot of aspects to this job, a lot of different things that you have to be able to manage and accomplish, and my impression was that Mr. Lopez would be slightly more quick in grasping all these different parts of the job, as opposed to Scott and [Plaintiff] [who] I thought would take a little bit more time." (*Id*.) Plaintiff's assumption that Peterson's comments were based on Plaintiff's age versus his intelligence, skills, or simply Plaintiff's behavior during the interview has no basis in the record. Indeed, Peterson testified that he had the feeling that Plaintiff was more interested in Peterson's job, and felt that Plaintiff had been "almost insulting" by implying that Peterson did not know what he was doing. (*Id*. at 110, 163, 166). Absent more, Plaintiff's speculation is insufficient evidence on which to ground a finding of intentional discrimination. *See Sanford v. Walgreen Co.*, No. 08 C 6325, 2010 WL 380907, at *8 (N.D. Ill. Jan. 27, 2010) ("[A]n employer is entitled to award promotions based on purely subjective criteria, and [Plaintiff] fails to offer any evidence that [the decisionmaker's] individual consideration of candidates is merely a 'mask for discrimination.'") (citation omitted).

On February 22, 2013, Allan Rothwell e-mailed his superior at the time, Canadian Senior Human Resources Director, Johanne Batistta, stating that:

> Mr. Skiba is a later career person who joined CN in 2008 in the RRTP. . . . He presents poorly to hiring managers and has a personal view of his skills and abilities which is inconsistent to how others see him and I have counseled him on this. Our offer to keep him as clerk is reasonable - he has the skills and it will likely be a better fit. That said, Mark is not one who takes feedback well so I am sharing this with you in case he escalates the matter to yourself.

(Def.'s Resp. Pl.'s Stmt. Add'l Facts, Dkt. # 75, ¶ 17.) Rothwell's reference to Plaintiff as a "later career person" is not evidence that Plaintiff's position was abolished because of his age. As recently noted by the Seventh Circuit, "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, No. 15-2132, 2017 WL 129114, at *8 (7th Cir. Jan. 13, 2017) (citation and internal quotation marks omitted). Plaintiff points to no evidence that Rothwell's statement to Batistta relates to Plaintiff's age versus his years of service.

Plaintiff also argues that substantially younger employees were "systematically" treated better than him. In support, he refers to a chart listing approximately 37 younger employees who apparently were offered positions Plaintiff had applied for and who "compared to Plaintiff at the time of the [relevant] job action." (Def.'s Resp. Pl.'s Stmt. Facts, Dkt. # 75, ¶ 110.) It is true that circumstantial evidence of discrimination can include "evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment." *Vaughn v. CA Techs., Inc.*, 169 F. Supp. 3d 833, 840 (N.D. Ill. 2016). However, "[s]imilarly situated employees must be directly comparable to the plaintiff in all material respects, [though] they need not be identical in every conceivable way." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (citation and internal quotation marks omitted). The "analysis calls for a 'flexible common sense' examination of all relevant factors." *Id*. (citation omitted). The purpose of making the comparison "is to eliminate other possible explanatory variables, 'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'—discriminatory animus." *Id*. (citation omitted).

Even assuming that all of the individuals listed were many years younger than Plaintiff, he makes no effort to demonstrate that they were directly comparable to him "in all material respects." As a result, no reasonable factfinder could rely on the fact that these younger individuals were offered positions over Plaintiff as evidence that Plaintiff's age was the but-for cause of the failure to hire him.

Plaintiff also asserts that the inconsistencies and implausibilities in the reasons Defendant relied upon for its various employment actions provide a basis upon which a jury could infer intentional discrimination. Plaintiff claims that Defendant failed to follow its internal policy to interview "all qualified candidates" because he was not interviewed for all positions for which he says he was qualified. This purported policy, referenced in an email by a human resources employee, was disputed by both the Human Resources Manager Stephanie Rogers and the Director of Human Resources Allan Rothwell. (Def.'s Resp. Pl.'s Stmt. Add'l Facts, Dkt. # 75, ¶ 92.) In any event, Plaintiff, who indicated in discovery that he applied for 82 management positions after his Motive Supervisor position was abolished, fails to show that he was qualified for all of the positions he applied for or that the reasons he was not interviewed for certain of those positions were not honest.[3] A number of Plaintiff's purported examples of pretext are premised on alleged "conflicting testimony" or "inexplicable ratings" regarding Plaintiff's skills, experience, and demeanor during the interviews. But when an individual applies to 82 positions, conflicting impressions about Plaintiff's experience or abilities with respect to different positions is hardly unexpected and cannot support a basis for finding intentional discrimination. Although the Court must draw inferences in Plaintiff's favor as the nonmoving party, the Court may not "draw[ ] inferences that are supported by only speculation or conjecture." *Brown v. Advocate S.*

---

[3] Plaintiff's assertion that Defendant's internal policy required that "all qualified candidates" must be interviewed is questionable given the lack of record support and that at least one of the positions to which he applied had 500 applicants and another had 64. (Pl.s Resp. Def.'s Stmt. Facts, Dkt. # 62, ¶¶ 64, 69.)

*Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012). Finally, Plaintiff's reference to Defendant's failure to comply with a consent decree in an unrelated case, which arose from allegations of race discrimination, is a nonstarter. The Court concludes that no reasonable jury could find intentional discrimination based on Plaintiff's evidence of purported pretext.

Considering the evidence as a whole, the Court concludes that no reasonable factfinder could conclude that Plaintiff's age constituted the but-for cause of either the elimination of Plaintiff's position in the Motive Power Department, or his inability to secure another management position despite his having applied for dozens of openings.

National Origin

Plaintiff also alleges that he was discriminated against because he is American, pointing to the following evidence: (1) Clermont, a senior manager in the Motive Power Department who is Canadian, was treated more favorably than Plaintiff, (2) IC employs more Canadian management employees than American management employees, (3) IC's "superior officers" are Canadian, and (4) IC gave shifting explanations for its alleged decision to centralize the Motive Power Department in Canada. (Pl.'s Resp., Dkt. # 63, at 15.) But Plaintiff admits that he reported to Clermont and fails to indicate how he and Clermont were similarly situated. Moreover, with respect to the assertions that IC employs more Canadian management employees than American and more of its "superior officers" are Canadian, Plaintiff fails to point to any record citation or paragraph in his statement of additional facts to support them, so the Court disregards these assertions. Finally, even assuming that IC gave shifting explanations for its decision to centralize the Motive Power Department in Canada, Plaintiff fails to explain how this decision demonstrates that IC discriminated against him because he is American. Because Plaintiff has failed to point to any evidence from which a reasonable jury could conclude that he was discriminated against because he is American, IC's motion for summary judgment on the national origin claim is granted.

Retaliation

"To survive summary judgment under the direct method, [Plaintiff] must present evidence of '(1) a statutorily protected activity; (2) a materially adverse action taken by [Defendant]; and (3) a causal connection between the two.'" *Chumbley v. Bd. of Educ. for Peoria Dist*. 150, No. 14-1238, 2016 WL 7188093, at *4 (C.D. Ill. Dec. 9, 2016) (citation and internal quotation marks omitted). Plaintiff claims that he was retaliated against when Defendant abolished his position as a Supervisor in the Motor Power Department effective January 21, 2013, after Plaintiff filed a complaint against his supervisor Daniel Clermont. He also appears to contend that he was not hired for any of the management positions he applied for after his Motive Power position was eliminated in retaliation for complaining about Clermont.

In the context of employment discrimination and retaliation, claims in the charge and allegations in the complaint must be alike or reasonably related. *See Luevano v. Wal-Mart*

*Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013) "Normally, retaliation and discrimination charges are not considered 'like or reasonably related' to one another." *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864-865 (7th Cir. 2010). Plaintiff admits that his EEOC charge does not mention retaliation, and the box associated with retaliation is not checked on the charge. Plaintiff contends that the narrative letter he sent in support of his EEOC charge and the EEOC investigator's notes indicate that he reported retaliation and that the EEOC investigated it.

Assuming without deciding whether Plaintiff exhausted his retaliation claim, the Court finds it is nevertheless time-barred. "In Illinois, an individual complaining of discriminatory conduct under the ADA, ADEA, Title VII or the Rehabilitation Act, must file a complaint with the EEOC within 300 days of the alleged unlawful conduct." *Edwards v. Illinois Dep't of Fin.*, No. 12 C 00371, 2016 WL 5233460, at *5 (N.D. Ill. Sept. 22, 2016). Plaintiff does not dispute that he learned of the elimination of his Motive Power Supervisor position on or around January 15, 2013 and that the elimination would be effective as of January 21, 2013 (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 62, ¶ 13), which is more than 300 days prior to filing his EEOC complaint on December 30, 2013. Plaintiff's contention that the adverse employment action occurred on March 4, 2013, when he began working as a clerk, is unpersuasive in light of Seventh Circuit authority to the contrary. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990) ("[I]t is the date of firing or other adverse personnel action, not the date on which the action takes effect" that is the date of accrual of injury, "provided it is communicated to the employee.").

Moreover, Plaintiff's assertions that equitable estoppel precludes Defendant from asserting a statute of limitations defense because it allowed him a paid leave of absence, continued to discuss his re-employment in a management position, and continued to investigate his complaint against his supervisor are unavailing. *See Hicks v. Medline Indus., Inc.*, 247 Fed.Appx. 808, 811 (7th Cir. 2007) ("[E]quitable estoppel is inapplicable [where the plaintiff] has adduced no evidence that [the defendant] took active steps to prevent her from suing."); *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 269 n.4 (7th Cir. 1995) (plaintiff's claims in age discrimination case that corporate executives did not respond to his and a friend's inquiries into his dismissal could not form basis to apply equitable estoppel to preclude application of statute of limitations for filing a charge with EEOC); *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir. 1992) (university was not equitably estopped to assert statute of limitations as defense to female professor's employment discrimination claim where university did nothing to dissuade professor from filing a charge). None of these facts suggest an intentional effort by Defendant to preclude Plaintiff from filing a claim.

For these reasons, Defendant's motion for summary judgment [50] is granted. All pending motions are stricken. Civil case terminated.


**Date**: April 12, 2017

_____
**Ronald A. Guzmán**
**United States District Judge**